[Cite as *State v. Bailey*, 2015-Ohio-5483.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 14CA3461 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| BRYAN L. BAILEY, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 12/23/15** |

_____

APPEARANCES:

Christopher T. Junga, Columbus, Ohio, for Appellant.

Matthew Schmidt, Ross County Prosecutor, and Pamela C. Wells, Assistant Ross County Prosecutor, Chillicothe, Ohio, for Appellee.

_____

McFarland, A.J.

{¶1} Bryan L. Bailey appeals his conviction in the Ross County Court of Common Pleas after a jury convicted him of illegal assembly or possession of chemicals for the manufacture of drugs, R.C. 2925.041, a felony of the third degree, and aggravated possession of drugs, R.C. 2925.11, a felony of the first degree. Appellant contends: (1) his speedy trial rights were violated; (2) he was denied the effective assistance of counsel; (3) the verdict was against the manifest weight of the evidence; and (4) the evidence was insufficient to sustain a guilty verdict. Upon review, we find

no merit to Appellant's arguments.  Accordingly, we overrule all assignments of error and affirm the judgment of the trial court.

FACTS

**{¶2}** Appellant, Sherry Anderson, and William Byerly, III were arrested on October 17, 2013 when law enforcement officers from Ross and Pickaway counties, working with the US Highway 23 Major Drug Task Force, executed a search warrant at 17291 S.R. 327 in Laurelville, Ohio (Ross County).[1]  Appellant was subsequently indicted by the Ross County Grand Jury on December 13, 2013 for one count of illegal assembly or possession of chemicals for the manufacture of drugs.  The case number assigned to this indictment was 13CR456.  On the same date a warrant was issued for Appellant who was lodged at the Ross County Jail.

**{¶3}** On December 16, 2013, Appellant was arraigned and the trial court appointed Attorney Carol Davis to represent Appellant.  The matter was set for jury trial on January 8, 2014.  Appellant remained in the Ross County Jail on bond.

**{¶4}** On December 20, 2013, by secret indictment, Appellant was indicted for aggravated possession of drugs.  This indictment also stemmed

---

[1] Two other persons were present when the warrant was executed: Eldon "Jay" Long and Carly Hinton.

from the October 17, 2013 warrant execution at the Laurelville residence.

The secret indictment was given case number 13CR519.

{¶5} On December 27, 2013, Appellee filed a motion to compel discovery. Appellee also requested reciprocal discovery pursuant to Crim.R. 16(C). On January 3, 2014, the court sustained Appellee's motion to compel and ordered that discovery be provided by January 3, 2014.

{¶6} On January 8, 2014, Appellee filed a motion to continue the jury trial of that date. The reason for the continuance was that a necessary witness, William Byerly, III, was unavailable for trial. On January 15, 2014, the trial court ordered trial be continued to January 29, 2014. The court's entry specified that the speedy trial provisions of R.C. 2945.71 were tolled. The trial court also ordered Appellant to submit requested discovery to Appellee by January 17, 2014. By entry dated January 24, 2014 the two cases were consolidated.[2]

{¶7} On January 28, 2014, Appellant filed a motion to continue trial, alleging his competency had come into question. On January 30, 2014, the trial court granted Appellant's motion to continue. The entry noted the statutory speedy trial provisions were tolled. On February 4, 2014, Appellant filed a motion to file his written not guilty by reason of insanity

---

[2] The court's entry further stated that all pleadings in the matter would be filed in Case No. 13CR456.

plea out of rule.  On February 4, 2014, Appellant filed a motion for an order for a competency examination pursuant to R.C. 2945.371.

{¶8}  Appellant filed a pro se motion to dismiss for violation of speedy trial provisions on February 7, 2014.  On February 26, 2014, the trial court granted an extension of 30 days to complete the competency evaluation report.  The matter was assigned for a competency hearing on April 10, 2014.  The matter was also set for trial on April 29, 2014.

{¶9}  On April 10, 2014, the competency hearing took place.  On April 17, 2014, the trial court's file-stamped entry stated Appellant was competent to stand trial.  On April 28, 2014, Appellant's counsel, Carol Davis, filed a renewed motion for permission to withdraw.  A file-stamped entry dated May 1, 2014 states that counsel's motion was granted and the speedy trial provisions of R.C. 2945.71 were tolled as of April 28, 2014.

{¶10}  On May 5, 2014, the trial court granted counsel's motion to withdraw and appointed new counsel, Attorney Lori J. Rankin.  On May 6, 2014, the trial court's file-stamped entry stated that, on the court's own motion, additional evaluation of Appellant's competency was to take place. The speedy trial provisions of R.C. 2945.71 were again tolled.  A hearing on the evaluation was scheduled for June 5, 2014.  Trial was scheduled for June

9, 2014. By the file-stamped entry of June 6, 2014 the trial court found Appellant was competent to stand trial.

{¶11} On June 9, 2014, Appellant's counsel filed a motion to continue trial due to her own previously scheduled vacation. On June 10, 2014, the trial court granted Appellant's motion and continued trial to July 10, 2014. The entry noted that the speedy trial provisions were again tolled.

{¶12} On June 19, 2014, Appellant filed a request for bill of particulars. On June 20, 2014, Appellant filed a motion for qualified laboratory analyst for purposes of independent analysis, pursuant to R.C. 2925.51. The trial court granted this motion. On June 25, 2014, Appellant's counsel again filed a motion to continue due to a previously scheduled jury trial. On July 14, 2014, the trial court granted counsel's motion to continue. The new trial date was scheduled on September 10, 2014. On July 17, 2014, Appellee filed a response to the request for bill of particulars.

{¶13} Appellant's trial commenced on September 10, 2014. On September 11, 2014, the Ross County jury found Appellant guilty of both counts as indicted. Appellant's judgment entry of sentence was filed September 22, 2014. On October 6, 2014, Appellant filed notice of appeal.

{¶14} On October 23, 2014, Appellant again filed a motion to dismiss based on speedy trial violations. On November 12, 2014, the trial court

denied Appellant's motion to dismiss based on the trial court's lack of

jurisdiction.  Where relevant, additional facts are set forth below.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED IN FAILING TO BRING
DEFENDANT TO TRIAL WITHIN A TIMELY MANNER IN
VIOLATION OF R.C. 2945.71, THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION, AND SECTION 10, ARTICLE I OF THE
OHIO CONSTITUTION.

II. DEFENDANT WAS DENIED HIS CONSTITUTIONAL
RIGHT TO REPRESENTATION WHEN HE RECEIVED
INEFFECTIVE ASSISTANCE OF COUNSEL.

III. THE VERDICT WAS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE.

IV. THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A
VERDICT OF GUILTY."

ASSIGNMENT OF ERROR ONE - SPEEDY TRIAL

A.  STANDARD OF REVIEW

{¶15}  "Upon review of a speedy-trial issue, a court is required to

count the days of delay chargeable to either side and determine whether the

case was tried within applicable time limits." *State v. Bailey,* 4th Dist. Scioto

No. 09CA3287, 2010-Ohio-2229, ¶ 56, quoting *State v. Sanchez,* 110 Ohio

St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 8.  "Our review of a trial

court's decision regarding a motion to dismiss based upon a violation of the

speedy trial provisions involves a mixed question of law and fact." *State v.*

*Eldridge,* 4th Dist. Scioto No. 02CA2842, 2003-Ohio-1198, at ¶ 5, citing

*State v. Brown*, 131 Ohio App.3d 387, 391, 722 N.E.2d 594 (4th Dist. 1998);

*State v. Kuhn*, 4th Dist. Ross No. 97CA2307, 1998 WL 321535. "We

accord due deference to the trial court's findings of fact if supported by

competent, credible evidence.  However, we independently review whether

the trial court properly applied the law to the facts of the case." *Eldridge* at

¶ 5, citing *Brown* at 391, 722 N.E.2d 594.  Finally, we must "strictly

construe the speedy trial statutes against the state[.]" *Brecksville v. Cook,* 75

Ohio St.3d 53, 57, 1996-Ohio-171, 661 N.E.2d 706.

## B.  LEGAL ANALYSIS

{¶16}  Appellant brings to our attention the fact that he was arrested

on October 17, 2013, and remained in jail during the entire pendency of his

case.  Appellant's trial commenced on September 10, 2014.  Appellant

contends his speedy trial rights were violated because the trial occurred well

past the expiration of the 270 days required pursuant to R.C. 2945.71.

Appellant sets forth in his brief the timeline of events occurring in his case

and concludes that his speedy trial protections had been violated by April 28,

2014.  By contrast, Appellee asserts that only 252 days of speedy trial time

had expired when Appellant was brought to trial on September 10, 2014.

Appellee also sets forth a timeline and points out Appellant made various

motions which tolled time in this case. Accordingly, we will review his arguments under the standard of review for motions to dismiss based on speedy trial violations, as set forth above.

{¶17} The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial in all criminal prosecutions. *State v. Sweat,* 4th Dist. Ross No. 14CA3439, 2015-Ohio-2689, ¶ 13. That guarantee is applicable to the states through the Fourteenth Amendment Due Process Clause. *Klopfer v. North Carolina,* 386 U.S. 213, 222-223, 87 S.Ct. 988, (1967). Similar protection is afforded under Section 10, Article I of the Ohio Constitution. See *State v. Meeker,* 26 Ohio St.2d 9, 268 N.E.2d 589 (1971), paragraph one of the syllabus ("The provisions of Section 10, Article I of the Ohio Constitution and of the Sixth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, guarantee to a defendant in a criminal case the right to a speedy trial."). Furthermore, Ohio law also includes a statutory speedy trial right. See R.C. 2945.71 et seq.

{¶18} The United States Supreme Court has recognized that delays are unavoidable in the criminal justice system, and has determined that whether a prosecution has been constitutionally speedy depends upon the particular facts and circumstances of each case. *Sweat, supra* at ¶ 14. See

*Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, (1972). Appellant has limited his argument to an alleged deprivation of a statutory speedy trial, so we will address his arguments solely in light of the Ohio statute.

{¶19} R.C. 2945.71 provides that a person against whom a felony charge is pending shall be brought to trial within two hundred seventy days after arrest. *Id.* at (C)(2). If an accused is in jail in lieu of bail solely on the pending charge, the statute mandates that each day count as three days for purposes of speedy trial calculation. *Id.* at (E). *State v. Hernandez,* 10th Dist. Franklin No. 12AP95, 2012-Ohio-4835, ¶ 8. The triple count provision does not apply when a defendant is being held in custody pursuant to other charges. *State v. MacDonald,* 48 Ohio St.2d 66, 357 N.E.2d 40, 41 (1976). Moreover, it does not apply when the accused is being held on a parole or probation violation holder. *State v. Brown* (1992), 64 Ohio St.3d 476, 479, 597 N.E.2d 97; *State v. Martin* (1978), 56 Ohio St.2d 207, 211, 383 N.E.2d 585. If an accused is not brought to trial within the statutory time limit, the accused must be discharged. R.C. 2945.73(B). However, R.C. 2945.71 time limits can be extended for any reason set out in R.C. 2945.72, but those extensions must be strictly construed against the State. See *State v. Alexander*, 4th Dist. Scioto No. 08CA3221, 2009-Ohio-1401, ¶ 17; *State v. Monroe,* 4th Dist. Scioto No. 05CA3042, 2007-Ohio-1492, ¶ 27.

**{¶20}** Upon our de novo review of the record, we set forth the following timeline:

| | |
|---|---|
| October 17, 2013 | Appellant arrested. |
| December 18, 2013 | Appellant served violation of community control on an unrelated 2012 case. |
| December 20, 2013 | Appellant indicted by secret indictment on second charge stemming from October 17, 2013 events. |
| | Matters consolidated and case set for trial on January 8, 2014. |

**{¶21}** The parties agree that between October 17, 2013 and December 18, 2013, Appellant was being held solely on the indictment stemming from the October 17, 2013 incident. Pursuant to R.C. 2945.71(E), Appellant's time, 62 days, was computed as three days for one. As such, Appellant received credit for 186 days.

| | |
|---|---|
| January 8, 2014 | State filed motion to continue. |
| January 25, 2014 | Appellant's sentence of prior case expires. |

**{¶22}** As of December 18, 2013, Appellant was served with notice of a community control violation in a 2012 case. On December 20, 2013, Appellant was indicted a second time for a charge arising from the October 2013 events. The State filed its motion to continue on January 8, 2014. Between December 18, 2013 and January 8, 2014, 21 days, Appellant was

being held on two unrelated matters, so he received credit towards speedy trial, one for one.  As such, Appellant has another 21 days counted against speedy trial.

{¶23}  On January 8, 2014, pursuant to R.C. 2945.72(H), the State's motion to continue tolled speedy trial on that date.  Appellant contends he did not agree to this continuance or otherwise waive speedy trial rights relative to this continuance.  However, the State argues its motion to continue was reasonable because a necessary witness, William Byerly, III, had not been served despite the State's requesting service on December 27, 2013.

{¶24}  In *State v. Sydenstricker,* 4th Dist. Washington No. 96CA15, 1996 WL 740501, *3, we noted the Ohio Supreme Court has held that continuances granted on the State's motion will toll the running of speedy trial time if the continuance is reasonable and necessary under the circumstances of the case. *State v. Saffell*, 35 Ohio St.3d 90, 91, 518 N.E.2d 934 (1988).  The record must affirmatively demonstrate that the continuance was reasonable and necessary. *Id*.  A continuance must be journalized before the expiration of the time limit specified in R.C. 2945.71. *State v. King*, 70 Ohio St.3d 158, 162, 1994-Ohio-412, 637 N.E.2d 903, citing *State v. Mincy*, 2 Ohio St.3d 6, 441 N.E.2d 571 (1982).

{¶25} Furthermore, the reasonableness of a continuance is determined by examining the purpose and length of the continuance as specified in the record. *State v. Lee*, 48 Ohio St.2d 208, 210, 357 N.E.2d 1095 (1976). The Supreme Court of Ohio has stated that "it is difficult, if not unwise, to establish a per se rule of what constitutes 'reasonableness' * * * Invariably resolution of such a question depends on the peculiar facts of a particular case." *State v. Saffell,* 35 Ohio St.3d at 91.[3] Reasonableness is strictly construed against the State. *State v. Singer*, 50 Ohio St.2d 103, 109, 362 N.E.2d 1216 (1977). Courts have interpreted a reasonable time to mean 30 days. *State v. Nichols,* 4th Dist. Adams No. 12CA955, 2013 WL 425601, ¶ 24. See *State v. Barb,* 8th Dist. Cuyahoga No. 90768, 2008-Ohio-5877, ¶ 9; *State v. Bailey*, 11th Dist. Portage No. 2005-P-0081, 2006-Ohio-6206, ¶ 19; *State v. Saultz,* 4th Dist. Ross No. 09CA3133, 2011-Ohio-2018, ¶ 15.

{¶26} In *State v. Pate,* 11th Dist. Portage No. 95382, 1996 WL 649145, *3, a continuance was granted because one of the state's primary witnesses failed to appear after being properly subpoenaed. The *Pate* court noted a continuance granted in such a situation does not thwart the intention of the speedy-trial statutes. As long as the prosecutor used "due diligence"

---

[3] In *Saffell,* the applicable speedy trial time limit was 90 days for a first degree misdemeanor.

to insure the witness's attendance, the court does not abuse its discretion in granting a continuance on this basis. *State v. Reeser*, 63 Ohio St.2d 189, 407 N.E.2d 25 (1980).

**{¶27}** In the case sub judice, upon our review of the record, we conclude the State used due diligence in subpoenaing the necessary witness, William Byerly, III, for trial. The record reveals the State filed its praecipe for service of a subpoena on December 27, 2013. The State's motion to continue was filed January 8, 2014 and indicated that service on Byerly by the Fairfield County Sheriff's Department had been unsuccessful. This was the State's only motion for continuance. The trial date was continued to January 29, 2014 and the entry to that effect was journalized January 15, 2014, which was prior to the expiration of the speedy trial time limit. The trial court's entry stated that speedy trial time was tolled pursuant to R.C. 2943.72(H). We agree that due to the State's January 8, 2014 motion to continue, the time between January 8, 2014 and the new trial date on January 29, 2014, time would have been reasonably tolled.

| January 28, 2014 | Appellant filed motion to continue. |
| February 4, 2014 | Appellant filed motion for competency. |
| February 7, 2014 | Appellant filed, pro se, a motion to dismiss. |
| February 26, 2014 | Trial court grants additional 30 days. |

| April 10, 2014 | Competency hearing. |
| April 17, 2014 | Trial court's entry states Appellant found competent. |

{¶28} After Appellant's prior sentence had expired and Appellant was served with an indictment for a second charge stemming from the October 13, 2013 events, Appellant was again able to avail himself of the triple-count provision. However, time was also tolled, pursuant to Appellant's motions, beginning on January 28, 2014. On that date, Appellant filed a motion to continue for the reason that his competency had come into question. It is well-established that a defense motion to continue trial tolls the speedy trial clock until the rescheduled trial date. *State v. Caulton,* 7th Dist. Mahoning No. 09MA140, 2011-Ohio-6636, ¶ 33; R.C. 2945.72(H); *State v. Brown*, 7th Dist. Mahoning No. 03-MA-32, 2005-Ohio-2939, at ¶ 41.

{¶29} Thereafter, on February 4, 2014, Appellant filed a motion for competency examination. Under Ohio law, the time within which an accused must be brought to trial is extended by "[a]ny period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined[.]" *State v. Blair*, 2nd Dist. Montgomery No. 26256, 2015-Ohio-3604, ¶ 8, quoting R.C. 2945.72(B). Time remains tolled until the trial court determines competence. *Blair,*

*supra,* at ¶10, citing *State v. Palmer,* 84 Ohio St.3d 103, 106-107, 702

N.E.2d 72 (1998).  Appellant also filed a pro se motion to dismiss for speedy

trial on February 7, 2014.  A motion to dismiss based on a speedy trial

violation stops the speedy trial clock until the motion is resolved. *State v.*

*Davis*, 7th Dist. Mahoning No. 08MA80, 2009-Ohio-4639, ¶ 28; *State v.*

*Nottingham,* 7th Dist. Belmont No. 05BE39, 2007-Ohio-3040, ¶ 14.[4]

**{¶30}** The trial court ruled on Appellant's competency on April 17,

2014.  Trial was scheduled for April 29, 2014.  Between April 17, 2014 and

April 28, 2014, 12 days elapsed.  Appellant was given three for one credit

for 12 days, so Appellant received a total credit of 36 days.

| | |
|---|---|
| April 28, 2014 | Attorney Davis filed a renewed motion for permission to withdraw. |
| May 1, 2014 | Court granted motion to withdraw. |
| May 5, 2014 | New counsel appointed. |
| May 6, 2014 | Court sua sponte ordered Appellant for a second competency evaluation. |
| June 5, 2014 | Trial scheduled for June 9, 2014. |
| June 6, 2014 | Appellant found competent. |

[4] Here, we presume the trial court overruled Appellant's pro se motion to dismiss by virtue of the fact that on February 26, 2014, by journal entry, the trial court granted Appellant an additional 30 days to obtain a competency report.  See *State v. Davis, supra* at ¶ 29, (While the judgment entry did not expressly state that the motion to dismiss was overruled, it could be concluded that it was because the case was set for trial.)

June 9, 2014                            Appellant's new counsel filed a motion to
                                        continue trial.

June 10, 2014                           Motion to continue granted.  Trial continued
                                        to July 10, 2014.

{¶31}  As of April 28, 2014, time was again tolled, when Appellant's

counsel filed the renewed motion to withdraw.[5]  Counsel's motion set forth

the following facts regarding the request:

> "Communications between Client and Counsel have been
> tenuous, at best, since the commencement of this case.  On
> Sunday, April 27, 2014 Counsel arrived at the Law
> Enforcement Center at approximately 10:30 a.m. with the intent
> of preparing Defendant for trial and to review anticipated
> evidence and testimony by the State.  Counsel had allocated the
> entire day for said activities.  Defendant immediately began
> denigrating Counsel's legal knowledge related to his defense,
> and asserted repeatedly that his speedy trial rights had been
> violated.  Counsel's attempts to respond fell on deaf ears.  He
> continued to repeat selective phrases from statues and denigrate
> Counsel.  Effective communication was completely absent.
> Counsel terminated the meeting after approximately 20
> minutes."

{¶32}  The motion to withdraw was granted on May 1, 2014.  New

counsel was appointed on May 5, 2014.  Speedy trial time would have begun

running on May 6, 2014, however, on May 6, 2014, the court, sua sponte,

filed a motion for competency.  As set forth above, the time is stopped on a

motion for competency determination until the determination is made.  This

---

[5] Although Appellant has argued that his speedy trial rights were violated as of April 28, 2014, by our calculations, 243 days had run at this point.

is true even when the trial court raises the issue of competence sua sponte. *Blair, supra,* at ¶ 9, citing *State v. Nottingham,* 7th Dist. Belmont No. 05BE39, 2007-Ohio-3040, ¶ 16; *State v. Simpson,* 11th Dist. Lake No. 93-L-014, 1994 WL 587896, *16 (Sept. 30, 1994). The court ruled on Appellant's competency a second time on June 6, 2014. At this point, the speedy trial clock began again.

{¶33} Although Appellant's jury trial was set for June 9, 2014, Appellant's new counsel filed a motion to continue on June 9, 2014. Counsel's reason was that she had a previously scheduled vacation. Cases have held that crowded dockets, judicial conferences, previously scheduled vacations for the court and witnesses, and other proceedings taking longer than anticipated provide cause for reasonable continuances. *State v. Newsome*, 8th Dist. Cuyahoga No. 60280, 1998 WL 158863, *3; *State v. Saffell* (1988), 35 Ohio St.3d 90, 518 N.E.2d 934; *State v. Lee* (1976), 48 Ohio St.2d 208, 357 N.E.2d 1095; *State v. Harr* (1992), 81 Ohio App.3d 244, 610 N.E.2d 1049; and *State v. King* (1996), 114 Ohio App.3d 669, 683 N.E.2d 870.

{¶34} We do not find counsel's request for a continuance to be unreasonable. First, Appellant's actions, in failing to effectively communicate with his counsel, set in action delays due to counsel's motion

to withdraw, the time the withdrawal request was pending, and the appointment of new counsel who had a previously scheduled vacation. It is well-recognized that vacations are scheduled months in advance. In this case, Appellant's new counsel explained in her motion that airfare, car rental, and campsite rentals for an out-of-state vacation had been paid for and scheduled months in advance. On these facts, we do not find the continuance granted here to be unreasonable. For the three days between June 6, 2014 and June 9, 2014, Appellant received 9 days credit.

{¶35} On June 10, 2014, the trial granted counsel's motion. Trial was continued to July 10, 2014. Here, time would be tolled from June 9, 2014 until July 10, 2014. In the meantime, Appellant filed various additional motions.

| | |
|---|---|
| June 19, 2014 | Appellant's request for bill of particulars. |
| June 20, 2014 | Appellant filed motion for independent lab testing. |
| June 25, 2014 | Appellant filed a motion to continue trial. |
| July 14, 2014 | Trial court granted motion to continue. Trial continued to September 10, 2014. |

{¶36} When Appellant's counsel filed the June 25, 2014 motion to continue, counsel indicated this was due to a conflicting trial which had been previously scheduled as of March 13, 2014. Counsel attached a copy of the

trial notice for the conflicting date.  Again, we find this request for continuance to be a reasonable one.  And, as set forth above, a defense motion to continue stops time until the new trial date.

{¶37}  For the foregoing reasons, we find Appellant's statutory speedy trial right was not violated.  Based on the reasoning set forth above, substantiated by the filings in the underlying record, we find 252 days of speedy trial time had expired and Appellant was brought to trial within a timely fashion.  Appellant's argument that his statutory speedy trial right was violated has no merit.  As such, we overrule his first assignment of error.

### ASSIGNMENT OF ERROR TWO - INEFFECTIVE ASSISTANCE OF COUNSEL

### A.  STANDARD OF REVIEW

{¶38}  Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn.14; *State v. Stout,* 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶ 21; *State v. Barfield,* 4th Dist. Ross No. 13CA3387, 2015-Ohio-891, ¶8.  To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v.*

*Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "[A] defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." *State v. Walters,* 4th Dist. Washington Nos. 13CA33 & 13CA36, 2014-Ohio-4966, ¶ 23, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62 and *State v. Hamblin,* 37 Ohio St.3d 153, 524 N .E.2d 476 (1988).

{¶39} "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated." *Walters* at ¶ 24. "There are countless ways to provide effective assistance in

any given case; therefore, judicial scrutiny of counsel's performance must be highly deferential." *Id* . (Citations omitted).

## B.  LEGAL ANALYSIS

**{¶40}**  Appellant asserts his statutory speedy trial right had expired prior than he was actually brought to trial.  Appellant argues his counsel was patently deficient for not addressing the pro se motion to dismiss Appellant filed on his own or moving for dismissal on his own in late April 2014. Appellee counters that the record shows Appellant received adequate representation of counsel.  Appellee further asserts that since Appellant's speedy trial rights were not violated and a motion to dismiss on speedy trial rights would not have been successful, Appellant has not demonstrated his counsel was incompetent or established any prejudice.

**{¶41}**  "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Walters, supra*, at ¶ 23 quoting *Strickland* at 689.  "Thus, 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Id*.  "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist.

Washington No. 07CA1, 2008-Ohio-482, ¶ 10, citing *State v. Smith,* 17 Ohio

St.3d 98, 100, 477 N.E.2d 1128 (1985).

{¶42}  Appellant's argument has no merit.  As set forth in our

resolution of Appellant's first assignment of error, Appellant's speedy trial

rights were not violated by April 28, 2014, as argued.  Appellant's speedy

trial time had not expired when his pro se motion to dismiss was filed on

February 7, 2014, nor had it expired in late April 2014 when, as argued, his

trial counsel erred by not pursuing dismissal.  As such, Appellant's counsel

did not render ineffective assistance by failing to pursue a motion which

would not have been successful.

{¶43}  In *State v. Davis,* 7th Dist. Mahoning No. 08MA80, 2009-

Ohio-4639, Davis' argument of ineffective assistance of counsel was

premised on the fact that the speedy trial time had run when his motion to

dismiss was filed.  In that case, the court of appeals held since Davis could

not show a speedy trial violation, Davis could not show that but for counsel's

error he would have insisted on going to trial instead of pleading guilty.  The

appellate court found no merit to Davis' ineffective assistance claim.

{¶44}  The same is true here.  Appellant's counsel's performance was

not deficient nor was Appellant prejudiced by his counsel's performance.

Furthermore, Appellant has not argued any other alleged errors or omissions

of his counsel.  For the foregoing reasons, Appellant's second assignment of

error is without merit.  As such, it is hereby overruled.

ASSIGNMENT OF ERROR THREE -
MANIFEST WEIGHT OFTHE EVIDENCE

A.  STANDARD OF REVIEW

{¶45}  "Weight of the evidence concerns 'the inclination of the

greater amount of credible evidence, offered in a trial, to support one side of

the issue rather than the other.  It indicates clearly to the jury that the party

having the burden of proof will be entitled to their verdict, if, on weighing

the evidence in their minds, they shall find the greater amount of credible

evidence sustains the issue which is to be established before them.  Weight

is not a question of mathematics, but depends on its effect in inducing

belief.' " *State v. Wickersham,* 4th Dist. Meigs No. 13CA10, 2015-Ohio-

2756, ¶ 24, quoting, *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-

2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d at

387, quoting Black's Law Dictionary 1594 (6th Ed. 1990).

{¶46}  When an appellate court considers a claim that a conviction is

against the manifest weight of the evidence, the court must dutifully

examine the entire record, weigh the evidence, and consider the credibility

of witnesses. *Wickersham, supra,* at ¶ 25.  The reviewing court must bear in

mind, however, that credibility generally is an issue for the trier of fact to

resolve. *Id.*  See, *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001);

*State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31.

"Because the trier of fact sees and hears the witnesses and is particularly

competent to decide 'whether, and to what extent, to credit the testimony of

particular witnesses,' we must afford substantial deference to its

determinations of credibility." *Id.*, quoting *Barberton v. Jenney,* 126 Ohio

St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya,*

2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v.*

*Lawson,* 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997).  As the *Eastley*

court explained:

> " '[I]n determining whether the judgment below is manifestly
> against the weight of the evidence, every reasonable intendment
> must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> If the evidence is susceptible of more than one construction, the
> reviewing court is bound to give it that interpretation which is
> consistent with the verdict and judgment, most favorable to
> sustaining the verdict and judgment.' " *Eastley* at ¶ 21, quoting
> *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461
> N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d,
> Appellate Review, Section 60, at 191-192 (1978).

{¶47}  Thus, an appellate court will leave the issues of weight and

credibility of the evidence to the fact finder, as long as a rational basis exists

in the record for its decision. *Wickersham, supra,* at ¶ 25; *State v.*

*Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; accord

*State v. Howard,* 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We

will not intercede as long as the trier of fact has some factual and rational

basis for its determination of credibility and weight.").

{¶48} Once the reviewing court finishes its examination, the court

may reverse the judgment of conviction only if it appears that the fact-finder,

when resolving the conflicts in evidence, " 'clearly lost its way and created

such a manifest miscarriage of justice that the conviction must be reversed

and a new trial ordered .' " *Wickersham, supra* at ¶ 26, quoting, *Thompkins,*

78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485

N.E.2d 717 (1st Dist. 1983).  A reviewing court should find a conviction

against the manifest weight of the evidence only in the " 'exceptional case in

which the evidence weighs heavily against the conviction.' " *Id.,* quoting

*Martin,* 20 Ohio App.3d at 175; *State v. Lindsey,* 87 Ohio St.3d 479, 483,

721 N.E.2d 995 (2000).

## B.  LEGAL ANALYSIS

{¶49} Under the third assignment of error, Appellant argues the

record does not support the jury's verdict on either conviction as the State

produced insufficient evidence to show he knowingly possessed either a

controlled substance or one or more chemicals used in the manufacture of a

controlled substance. Appellant argues the only evidence of actual possession is William Byerly's testimony that on October 16, 2013, he arrived at Sherry Anderson's residence and drove Appellant, Anderson, and others to Walmart to purchase Sudafed. Appellant points out that this testimony was not supported by physical evidence and was directly refuted by other testimony. Appellant argues Byerly's recollection is not reliable because Byerly admitted to taking Subutex, smoking methamphetamine, and testified he was "buzzed" and "high" when the events occurred.

{¶50} Furthermore, Appellant argues the State showed only proximity to the recovered 167.7 grams of methamphetamine located in a jar in the residence. Appellant points out the jar containing a partial thumb print was located in the kitchen while he had been sleeping and was apprehended behind the residence. Appellant contended at trial that the jar was routinely used as a drinking glass. He testified he went to bed while others in the residence were up and active. He emphasizes the State presented no evidence as to when the fingerprint was made on the jar, nor were his fingerprints found on the actual ingredients or packaging of the methamphetamine production. Appellant attacks Byerly's credibility while urging reliance on his own.

{¶51} At the two-day trial, the State presented testimony from Ross and Pickaway County law enforcement officers, two forensic scientists from the Ohio Bureau of Criminal Investigations (BCI), and Appellant's co-defendant William Byerly, III. Appellant testified on his own behalf and called Detective Stanley Addy and Sherry Anderson. All witnesses' testimony pertained to: (1) the events which transpired on October 16, 2013; (2) the execution of the search warrant on October 17, 2013 at Appellant's residence located at 17291 S.R. 327 in Laurelville, Ohio; or (3) the transport, processing, testing, and findings regarding the evidence found at the residence.

{¶52} Detective Alan Lewis, a career law enforcement officer currently with the Ross County Sheriff's Department, was lead investigator with the search warrant execution at Appellant's residence. He testified that as he approached the residence he smelled a strong chemical odor. Detective Lewis identified various exhibits, including State's Exhibit A, a pill grinder located in the kitchen area; State's Exhibit T, coffee filters; and State's Exhibit B, a ball mason jar. Detective Lewis testified he interviewed Sherry Anderson, William Byerly, III, and Appellant. Detective Lewis testified Appellant admitted that he knew meth was being cooked in the residence, but Appellant also claimed he had nothing to do with it.

{¶53} Detective Jason Park testified he was employed by the Pickaway County Sheriff's Office and the US 23 Major Drug Crimes Task Force. He participated in the execution of the search warrant. Detective Park testified when the tactical team made entry in the front of the trailer, he was outside at the back of it. He identified State's Exhibit M as a photograph of the rear of the trailer. Park testified when he first arrived at the back, nobody was there. However, when the tactical team entered the front door, Appellant then exited the back door. Detective Park testified Appellant was not already outside when the search and entry team arrived, and Detective Park denied seeing a dog there. Park ordered Appellant to show his hands and other team members ordered Appellant to the ground. Detective Park also assisted by observing and collecting evidence of the manufacture of methamphetamine.

{¶54} On cross-examination, Detective Park identified Defense Exhibit 11, a report he generated regarding the execution of the warrant. Detective Park acknowledged the report does not contain the information that Appellant was at the back of the trailer.

{¶55} Detective Doug Davis testified he was employed by the Circleville Police Department and the US 23 Major Crime Task Force. He was part of the entry team and the search team. Davis testified he smelled a

strong smell of chemicals within the residence. Davis testified he collected two pots (methamphetamine labs in pop bottle vessels), two generators, a set of scales, and liquid in a mason jar. He testified one of the generators was in the kitchen window, extracting fumes out of the kitchen. Davis further testified there was lithium located in one of the bottles, and a cold pack in the kitchen. Davis identified State's Exhibit F, a photograph of a mason jar with liquid in it. Davis testified the mason jar was found underneath the cabinet on the counter top in the kitchen. Davis further identified State's Exhibit G, the mason jar that once contained the liquid. Davis testified he extracted the liquid into separate vials and submitted them to BCI for testing.

{¶56} Davis also identified State's Exhibit K, which contained two receipts and a blister pack of nasal decongestant. A Walmart receipt indicated someone had purchased brake cleaner. The second receipt indicated purchase of drain cleaner from Menards. Davis testified both items and the cold pack were used in the manufacture of methamphetamine.

{¶57} Davis further identified State's Exhibit I, a photograph of the Sudafed box and an actual opened battery wrapper. He located the empty box of Sudafed in the trash can. Davis testified State's Exhibit J was a photograph of the items that were removed from the trash can and laid out

by him, which included an open battery pack, an ice compress, engine starter fluid, two green bottles with a substance in the bottom, and blister packs.

{¶58} On cross-examination, Davis admitted he did not know who put the receipts in the trash can. He also admitted he did not contact Menards or Walmart to attempt to obtain any video of the person or persons making the purchases.

{¶59} Stanley "Joe" Addy testified he was employed by the Ross County Sheriff's office as a detective on October 17, 2013. He also assisted with evidence collection and taking photographs when the warrant was executed. He testified as each officer found an item, they brought it to him to photograph, log, and bag as evidence. He also photographed each item in the location where it was found. Detective Addy identified State's Exhibit S, a handwritten log of the items collected at the scene, noting the name of the item, the name of the detective, and the location of the item. All items were secured in his office at the Ross County Law Enforcement complex until they could be locked into a locker.

{¶60} Detective Addy identified State's Exhibit P, a photograph of the kitchen table of the residence. He testified he retrieved starting fluid, tubes, and white powder from the kitchen table. He further identified State's Exhibit R, a photograph of a can of starting fluid, scales, brake fluid, tubing

with tape, a salt container with white powder, a pipe and a baggy with white powder, which he collected.

{¶61} The jury also heard testimony from Jamie Hafner, who testified he was employed with corrections at the Ross County Jail on October 17, 2013. He booked and fingerprinted Appellant. He identified State's Exhibit N, two copies of fingerprint cards for Appellant and Sherry Anderson.

{¶62} Detective Wheaton, another employee of the Ross County Sheriff's Department, testified he transported evidence to BCI on November 21, 2013. He worked with another officer, John Branham, who was new and unsure of the procedures. Wheaton identified State's Exhibit 6, a submission sheet showing which items he transported for testing. All the items bore Deputy Branham's name and remained in both officers' custody and control. However, Detective Wheaton testified he watched as Deputy Branham performed the transport process.

{¶63} Darryl Robinson testified he was employed by the Ross County Sheriff's Department as an evidence technician on December 30, 2013. He testified on that date, he transported State's Exhibit A, a yellow manila envelope with the prints of Bryan Bailey and Sherry Anderson to BCI.

{¶64} The jury also heard testimony from BCI experts who examined, processed, and tested the evidence submitted in this case. Ashley Owen testified her job duties involve the examination and processing of evidence and the preservation of latent prints. Ms. Owen was qualified by the court to testify as an expert witness. She identified State's Exhibit DD, an original report she prepared of her findings in this matter. Ms. Owen testified that her examination and comparison revealed that Appellant's right thumb print matched State's Exhibit G, and BCI number 2.2 on her report, the smaller mason jar.

{¶65} Stanton Wheasler, also of BCI, testified he analyzed evidence for the presence of controlled substances and testified as an expert about his findings. He analyzed 6 pieces of evidence. He testified he found a trace amount of pseudoephedrine on State's Exhibit A, the grinder. He also found 167.6 grams of methamphetamine, liquid and solid, in the two vials, State's Exhibit H. He also identified State's Exhibit EE, the report he prepared of his findings.

{¶66} William Byerly, III, Appellant's co-defendant, testified on behalf of the State of Ohio. At the time of his testimony, he was residing at a locked down correctional and treatment facility. Byerly testified he was charged with illegal assembly or possession of chemicals for manufacture.

He testified although his charges were not reduced as part of his plea agreement, the State recommended he be placed in the treatment facility. Byerly acknowledged a prior conviction for trafficking in heroin in 2009.

{¶67} Byerly testified on October 16, 2013, he was invited to Appellant's residence by Jay Long. When he arrived, Appellant, Anderson, Jay, and Carly were present. Byerly testified when he arrived, Appellant asked him to take the group to buy a box of Sudafed and offered him $20.00 to do so. Byerly testified he drove everyone to Walmart in Circleville. At first the others tried to purchase it, but ultimately, Byerly ended up going inside to make the purchase. He then handed the Sudafed to Appellant. Byerly testified they returned to the residence around 10:00 or 10:30.

{¶68} Byerly further testified that later, Appellant, Jay, and he left for approximately 40 minutes. When they returned, Byerly testified he never left the residence until the law enforcement officers arrived. Byerly testified he saw plastic bottles and a pump on a table in the kitchen. He testified Appellant, Jay, and Sherry Anderson were in and out of the kitchen. Byerly testified he actually saw Appellant and Jay using a pump to blow something out the window. During this time, Byerly took two Subutex pills and

smoked some meth.[6]  He testified everybody at the residence except Carly

Hinton was "dabbling" with the methamphetamine.

{¶69}  On cross-examination, Byerly acknowledged he was laid off

and had no income in October 2013.  He reiterated he purchased the Sudafed

and it was placed in a white paper bag.  He handed it to Appellant in the

driveway of the trailer.  He testified Appellant took the Sudafed inside the

trailer and Byerly thought he saw it lying on the countertop once.  He

testified he did not know how to make meth and he had never made it

previously.  Byerly testified he had met Appellant once or twice before and

he was not familiar with the trailer.  He testified he never saw Jay working

on the stereo system in Anderson's car.  Byerly denied having meth and

bringing it to the premises.  He denied bringing the box with the equipment

for making meth to the premises.

{¶70}  Defense counsel played a video interview of Byerly with

Detective Lewis and asked Byerly various questions.  The record indicates

the video was difficult to hear.  When counsel questioned Byerly about

inconsistencies, Byerly testified that his recollections in court were

"probably" better than they were at the time of the interview because he was

"probably rambling" at the time.  He clarified that the group "probably"

---

[6] On cross-examination, Byerly testified that Subutex is like Suboxone, generally a substitute for heroin. He admitted he did not have a prescription for the Subutex.

returned from Walmart about 10:30 p.m. He testified although he heard himself talk about giving Jay a ride on the video, he didn't know he was being questioned about Appellant.

{¶71} At the close of the State's case, defense counsel moved for a Crim.R. 29 judgment of acquittal of the charges. The trial court denied the motion.

{¶72} When Appellant presented his case, he began by recalling Detective Addy. Addy identified State's Exhibit X, a mason jar with fingerprints and a yellow lid. Detective Addy testified Detective Davis gave him the mason jar for inventory. He also identified Defendant's Exhibit 7 and State's Exhibit P, a photograph of the container with the yellow lid. He testified there was liquid in the yellow lid container, Defendant's Exhibit 7. He further identified State's Exhibit P, noting a plastic container in the foreground without a yellow lid and without any liquid. Detective Addy testified he did not know what happened to the contents of the container with the yellow lid, but he thought it was put into another container and collected as evidence. He further testified it was possible that the liquid was destroyed at the scene. However, he also acknowledged there was no evidence that the liquid was destroyed at the scene.

{¶73} The defense also called Sherry Anderson. Anderson testified that on October 17, 2013, she lived at the S.R. 327 address with Appellant. She acknowledged an intermittent romantic relationship since May 2012. Anderson testified Appellant regularly used meth, however, she denied Appellant made or smoked it. On October 16, 2013, Anderson had been awake for three days. She had smoked meth, marijuana, and taken Vicodin. She testified she didn't think smoking meth had an effect on her memory.

{¶74} Anderson acknowledged she had been charged with illegal assembly and aggravated drug possession stemming from the October 2013 events. It was her understanding that if she pled guilty, she would receive an 18-month sentence with credit for time served if she testified consistent with her statement given to Detective Lewis. She also acknowledged a prior complicity to petty theft conviction.

{¶75} Anderson's testimony began by her describing the layout of the trailer. She also testified she and Appellant used mason jars as drinking glasses. According to Anderson, on October 16, 2013, Jay and Carly arrived around noon to fix her car. Anderson testified Byerly stopped by around 3:00 or 4:00. Anderson testified she traded a car stereo to Byerly for $30.00 and some methamphetamine. Then she and Carly smoked it.

{¶76} Anderson testified when she and Appellant saw a box of chemicals to make meth in the trunk of Byerly's car, Appellant became upset. Anderson identified Defendant's Exhibit 3, a photograph which depicted the box in the back of Byerly's car. Anderson testified Appellant asked Byerly to leave, and he did so around 6:00 to 7:00.

{¶77} Carly and Jay stayed overnight. Appellant and Sherry argued about the meth situation. Then they went to bed around 10:00. Anderson testified Appellant did not get out of bed until they woke up the next day.

{¶78} Anderson testified when they woke up around 9:00 or 10:00 the next morning, Appellant was mad because there were fumes in the house. Anderson testified Appellant let the dogs out the back way and went out to urinate off the back porch, as he usually did. She specifically testified she saw Appellant go out the back door. She also testified the dogs came back in. Anderson stayed in bed until the police arrived. Anderson denied knowing methamphetamine was being manufactured at her home. She realized that's what was happening when she woke up and smelled fumes and when she was arrested. She also denied that she or Appellant accompanied Byerly to Walmart on October 16, 2013.

{¶79} Appellant, the final witness, also testified to an intermittent romantic relationship with Anderson. He testified she struggled with

addiction to methamphetamine, however, he denied ever using it.  Appellant

testified he has spinal stenosis and attention deficit hyper activity disorder.

He takes Hydrocodone and Ritalin by prescription.  He receives income for

his disabilities.  He also drinks 17 or 18 beers a day and sometimes

moonshine.  Appellant acknowledged he has prior convictions for

conveyance of prohibited items, escape, breaking and entering, and theft.

{¶80}  Appellant testified Carly and Jay came over on October 16,

2013.  They came so Jay could work on Anderson's car, but also to bring

Appellant a bag of marijuana.  Appellant testified Jay invited Byerly over

that day.  While Jay was working on the vehicle, he opened the trunk of

Byerly's car to get electrical tape.  Then Appellant saw a white box with

tubes sticking out in the truck.  He identified Defense Exhibit 4, the white

box Appellant saw in  Byerly's car.  Appellant also saw a white

pharmaceutical bag containing cold pills but he denied bringing the box into

his house.  Appellant denied asking Byerly to take him to Walmart to buy

Sudafed.

{¶81}  Appellant was disgusted when he saw the chemicals in his

driveway.  He went inside to get a beer.  Appellant saw Carly, Byerly, and

Anderson sitting at the kitchen table smoking meth.  Appellant denied

leaving his bedroom after he went to bed, until he woke up to the smell of

fumes.  He reacted by kicking the bed and saying "It better not be what I think's going on out there…" Appellant then went out to urinate and let his dog out.  When he came back and started to close the door, the SWAT team ordered him to get on the ground.

{¶82}  Appellant denied:

1)  Cooking meth in his kitchen.  He testified he was scared to death of being blown up.

2)  Having starter fluid, cold packs, lye, and batteries in his home before October 16-17, 2013.

3)  Knowing meth was being cooked in his house.  He was aware the others were using, but not cooking meth.

4)  Seeing Byerly return to his house or inviting him back.

5)  Awareness of a jar in his kitchen containing liquid and solid methamphetamine.

6)  Telling Detective Lewis that Jay was cooking meth all night.

7)  Seeing the receipts from Menards and Walmart prior to trial.

8)  Purchasing brake fluid from Walmart or drain cleaner from Menards in October 2013.

9)  Asking Byerly to take him to Walmart to purchase Sudafed.

{¶83}  We do not believe that appellant's illegal manufacture conviction weighs heavily against conviction.  Instead, we conclude, after

our review of the evidence, that the evidence leads to a rational conclusion that appellant knowingly assembled and possessed the chemicals used to make methamphetamine, and that he knowingly engaged in some part of the manufacturing process. We further find the evidence leads to the rational conclusions that Appellant possessed the finished product.

{¶84} Appellant was convicted of illegal assembly or possession of chemicals for the manufacture of drugs, R.C. 2925.041, and aggravated possession of drugs, R.C. 2925.11, which provides:

> "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.
>
> (B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section."

Further, R.C. 2925.11, possession of controlled substances, provides: "(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶85} In *Wickersham, supra,* at ¶ 30, we reiterated that "A person acts knowingly, regardless of his purpose, when he is aware that his conduct

will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Id.*  See also R.C. 2901.22(B).  "With regard to the ability to prove an offender's intentions, the Ohio Supreme Court has recognized that 'intent, lying as it does within the privacy of a person's own thoughts, is not susceptible [to] objective proof.' " *Wickersham, supra,* quoting, *State v. Wilson,* 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 41, quoting *State v. Garner,* 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995).  Thus, "whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances * * *." *State v. Huff,* 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist. 2001). *Wickersham, supra*, at ¶ 30.

{¶86} Furthermore, " 'Manufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production." *Wickersham, supra,* at ¶ 31. R.C. 2925.01(J).

{¶87} In *State v. Gavin*, 4th Dist. Scioto No.13CA3592, 2015-Ohio-2996, ¶ 35, we observed: " '[P]ossession' is defined as 'having control over

a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.' " R.C. 2925.01(K). "Possession may be actual or constructive." *Gavin, supra,* quoting *State v. Moon,* 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19, citing *State v. Butler,* 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶88} " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *Gavin, supra,* at ¶ 36, *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry,* 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Gavin, supra,* quoting *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown,* 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the State must show that the defendant was conscious of the object's presence. *Gavin, supra*; *Hankerson* at 91; *Kingsland* at ¶ 13. Both dominion and control, and whether a person was conscious of the

object's presence may be established through circumstantial evidence. *Gavin, supra*; *Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Id*.

{¶89} In *Wickersham,* the defendant was not on the premises he shared with his significant other when law enforcement officers discovered an active methamphetamine lab and precursors. There, the defendant was concerned with the lack of direct evidence to connect him to the methamphetamine lab in the truck and to the materials in his girlfriend's home. However, we pointed out the state was not required to prove that Wickersham was the individual who assembled all of the materials located or that he started the process of manufacturing methamphetamine. Instead, we observed the State needed only to prove that Wickersham engaged in any part of the production of methamphetamine. R.C. 2929.01(J).

{¶90} Furthermore, in *Wickersham* we noted the well-established law holding, however, that "a defendant may be convicted solely on the basis of circumstantial evidence." *Id.* at 9*; State v. Nicely,* 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence inherently possess the same probating value." *Jenks*, paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of

other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * ' " *Nicely,* 39 Ohio St.3d at 150, quoting Black's Law Dictionary (5 Ed. 1979) 221.

{¶91}  In *Wickersham,* to show the defendant's knowledge of and connection to the precursors and methamphetamine, the State relied upon testimony that Wickersham lived where the precursors and methamphetamine were found by law enforcement officials.  We found the evidence further showed that Wickersham knew, or probably knew, that methamphetamine was being manufactured on the premises.  A search of the premises revealed copious amounts of materials used to manufacture methamphetamine in the bedroom Wickersham shared with his significant other and in the attic located near the bedroom. *Wickersham, supra,* at ¶ 35. See *also State v. Kirkby*, 9th Dist. Summit Nos. 27381 and 27399, 2015-Ohio-1520, ¶ 23 and ¶ 25 (concluding that defendant's illegal manufacture of methamphetamine conviction not against the manifest weight of the evidence and noting that premises contained "copious amounts of chemicals, residue, drug paraphernalia" and "an active one-pot meth lab").  In *Wickersham,* the search also uncovered active methamphetamine production in a truck parked next to the premises.  We held the amount of chemicals

and paraphernalia found in the bedroom suggests that appellant knew that methamphetamine was being produced on the premises.

{¶92} In the case sub judice, the search of Appellant's residence also yielded copious amounts of chemicals and precursors for the manufacture of methamphetamine. In the kitchen of the mobile home where Appellant resided, officers found: a pill grinder with a trace amount of pseudoephedrine, coffee filters, two green bottle "labs", generators, scales, liquid in a mason jar, lithium in a plastic bottle, an empty box of Sudafed in the kitchen trash can, receipts from Walmart and Menards in the kitchen trash can evidencing the purchase of brake fluid and drain cleaner, the empty blister packs, tubing, a salt container with white powder, a pipe, and a baggy with white powder. BCI scientist Stanton Wheasler testified the two vials of methamphetamine contained 167.6 grams of liquid and solid methamphetamine. The vials came from State's Exhibit G, the mason jar, and were extracted into the two vials according to the testimony of Detective Davis.

{¶93} In addition, Detective Lewis testified when he approached the trailer, he smelled a strong chemical odor. Detective Davis testified to the strong smell of chemicals within the residence. In fact, he testified a generator was in the kitchen window extracting fumes when he first arrived.

This leads to the inference that the officers had entered an active methamphetamine lab or one that had been so recently active that it was necessary to extract the fumes at the time the officers arrived.

{¶94} In *Wickersham*, the evidence additionally suggested that the defendant engaged in some part of the manufacture of methamphetamine. We noted:

> "Some of the ingredients necessary to produce methamphetamine were prepared inside the residence. The officers discovered stripped lithium batteries and cold pack bladders throughout the bedroom and attic. The officers testified that both are precursors to the manufacture of methamphetamine. A logical inference is that someone in [the]residence prepared the lithium batteries and cold packs so that they could be used to produce methamphetamine."

We pointed out that although the state did not present any direct evidence that Wickersham was the individual who stripped the lithium batteries or removed the bladders from the cold packs, it did present ample circumstantial evidence to that effect.

{¶95} Here the officers found the empty box of Sudafed in the trash, the empty blister packs, and the opened battery wrapper. They also found solid and liquid methamphetamine. Prior to the officers' arrival, someone was extracting the fumes from the kitchen and out the window. This would be circumstantial evidence of Appellant's involvement. However, there is

direct evidence that Appellant engaged in a part of the manufacture of methamphetamine through the testimony of William Byerly, III.

{¶96} Byerly specifically testified when he arrived at Appellant's residence on October 16, 2013, Appellant asked him to take the group to buy a box of Sudafed and offered him $20.00 to do so. He testified he drove the group there, made the purchase himself, and handed the box of Sudafed in a white paper bag to Appellant in Appellant's driveway when they returned. And, Byerly specifically testified during his time going back and forth from the kitchen, he saw Appellant and Jay using the generator to extract the fumes out of the kitchen window.

{¶97} Furthermore, in *Wickersham,* the State also introduced into evidence photographs of the upstairs bedroom and attic where numerous chemicals, batteries, and cold packs were discovered. We held from this, the jury could have inferred that appellant was aware of the drug activity and methamphetamine production occurring at the residence. Here, the evidence was found in a common area, the kitchen of Appellant's residence. Both Appellant and Sherry Anderson testified they went to bed at 10:00 or 10:30 p.m. and did not wake up or leave the room until the next morning. While they both deny Appellant left the bedroom, from their testimony it may also be inferred that they never left the home during the relevant time period.

Appellant had a possessory interest as it was his residence, and it is established that he was home on October 16, 2013 and October 17, 2013. Based on the large amounts of chemicals found in the home, along with the strong chemical odor, one can reasonably infer Appellant was aware of the drug activity and meth production occurring inside his home.[7]

{¶98} As in *Wickersham,* the nature of some of the evidence against Appellant is circumstantial. The only direct evidence the jury had that Appellant constructively and/or actively possessed the precursors for which to manufacture methamphetamine and possess the controlled substance is Byerly's testimony, which contradicts Appellant's and Sherry Anderson's. Byerly, as previously stated, had a prior felony conviction, was arrested out of the same incident involving Appellant, made a plea agreement with the State, and admitted he was using illegal substances the morning of his arrest. His credibility is indeed subject to scrutiny.

{¶99} In *State v. Seal,* 4th Dist. Highland No. 13CA1, 2014-Ohio-4167, Seal was convicted of illegal manufacture of drugs, illegal assembly

---

[7] In Wickersham, we also concluded the jury could have inferred, from the prevalence of chemicals and materials used to make methamphetamine and appellant's and Holter's relationship, that the two were partners in a romantic sense and partners in manufacturing methamphetamine. *Id.* at ¶ 36. See *State v. Smith,* 3rd Dist. Paulding No. 11-95-7 (Nov. 17, 1995) (observing that large quantity of narcotics found throughout the house, including defendant's bedroom, constituted circumstantial evidence of defendant's knowledge of and control over those narcotics). Thus, this is not a case in which the only evidence of appellant's guilt is his status as a resident of the premises. See *State v. Haynes,* 25 Ohio St.2d 264, 270, 267 N.E.2d 787 (1971) (concluding that when law enforcement officers seize narcotics from jointly occupied premises the defendant's status as a resident or lessee, standing alone, creates no inference of guilt).

or possession of chemicals for the manufacture of drugs, and other charges.

A co-defendant, Ervin, testified that he was present in Seal's camper just

prior to the arrival of law enforcement and that he witnessed Seal adding

lithium strips to a bottle in the camper, and shaking the bottle.  Ervin also

claimed that Seal told him he was cooking methamphetamine.

{¶100}  Ervin admitted to being a methamphetamine user and to

having a prior theft conviction.  Ervin also admitted that he was receiving a

plea deal in his own criminal case arising from these events in exchange for

his testimony.  Ervin, however, denied cooking methamphetamine in the

camper, and testified that he was not under the influence of

methamphetamine while giving his testimony.  We held that based on this

evidence, we could not say that the verdict was against the manifest weight

of the evidence.  Specifically, we found:

> "The State presented credible evidence that Seal, at the least,
> had a possessory interest over the camper and its contents and
> that he was inside of the camper on the day in question.  Thus,
> the evidence, if believed, could convince reasonable jurors that
> he was in constructive possession if not actual possession over
> the illegal chemicals and methamphetamine lab. *Id.* at 33.
>
> We recognize that Ervin's testimony is particularly important
> because it places Seal in the camper just prior to the search of
> the property and explicitly states that Seal was manufacturing
> methamphetamine.  We also recognize that Ervin is an admitted
> methamphetamine user, convicted thief, and had an incentive to
> testify in the case.  However, Ervin's credibility was a matter
> for the jury to decide. See *State v. Fisher,* 4th Dist. Jackson No.

11 CA10, 2012-Ohio-6260, 2012 WL 6738681, ¶ 9 ("[T]he weight of the evidence and witness credibility are issues that the trier of fact must determine. * * * The rationale for this view is that the trier of fact * * * is in the best position to view the witnesses and to observe their demeanor, gestures and voice inflections and to use those observations to weigh credibility. * * * Consequently, a jury may choose to believe all, part or none of the witness testimony."). Moreover, other than Ervin's testimony regarding the distance between the camper and the house, we discern no obvious inconsistencies between his testimony and the testimony of the other witnesses, which would indicate that his testimony is trustworthy. *Id.* at 34.

The jury here apparently found Ervin's testimony, or at least portions of it, to be credible. Even if the jury did not find Ervin credible, the verdict is still consistent with the State's other evidence establishing Seal's constructive possession or actual possession of the camper and its contents. Put another way, even without Ervin's testimony, more than enough evidence exists to support the verdict. *Id.* at 35."

{¶101} Similarly, the jury found Byerly's testimony, or portions of it, credible, while finding Appellant and Sherry Anderson's testimony, or portions of it, not as credible. The jury was properly instructed that it was free to believe all, part, or none of the testimony.

{¶102} Furthermore, even without Byerly's testimony, the jury verdict is consistent with the State's other evidence establishing Appellant knowingly engaged in some part of the manufacturing process and constructively or actually possessed the finished product. The large amounts of chemicals and precursors in Appellant's residence alone is overwhelming. And, Ashley Owen of BCI testified Appellant's right thumbprint matched

the print on State's Exhibit G, the smaller mason jar which contained liquid

methamphetamine, as determined by BCI expert Stanton Wheasler.

{¶103}  Having examined the record, weighed the evidence, and

considered the credibility of the witnesses, we find a rational basis exists for

the jury's verdict.  In resolving the conflicts in the evidence, specifically,

among the testimony given by Appellant, his girlfriend, and a co-defendant,

we find no reason not to defer to the jury's conclusion.  We do not find the

jury clearly lost its way or that a manifest miscarriage of justice has

occurred.  As such, we overrule Appellant's third assignment of error and

affirm the judgment of the trial court.

ASSIGNMENT OF ERROR FOUR -
SUFFICIENCY OF THE EVIDENCE

A.  STANDARD OF REVIEW

{¶104}  "The legal concepts of sufficiency of the evidence and weight

of the evidence are both quantitatively and qualitatively different." *Wright,*

*supra,* at ¶ 22; *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541

(1997).  "When reviewing the sufficiency of the evidence, our inquiry

focuses primarily upon the adequacy of the evidence; that is, whether the

evidence, if believed, reasonably could support a finding of guilt beyond a

reasonable doubt." *State v. Davis,* 4th Dist. Ross No. 12CA3336, 2013-

Ohio-1504, ¶ 12.  "The standard of review is whether, after viewing the

probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.,* citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution. *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

## B.  LEGAL ANALYSIS

{¶105}  When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *Wickersham, supra,* at ¶ 27, citing *State v. Pollitt,* 4th Dist. Scioto No. 08CA3263, 2010–Ohio–2556, ¶ 15.  " 'Thus, a determination that [a] conviction is supported by the *weight of the evidence will also be dispositive of the issue of sufficiency*.' " *State v. Lombardi,* 9th Dist. Summit No. 22435,

2005-Ohio-4942, ¶ 9, quoting *State v. Roberts,* 9th Dist. Lorain No. 96CA006462 (Sept. 17, 1997).  Having found Appellant's convictions for illegal assembly or possession of chemicals for the manufacture of drugs and possession of drugs are supported by the manifest weight of the evidence, we further find that the convictions are sustained by sufficient evidence.  In other words, having reviewed the record in its entirety, we find any rational trier of fact would have found the essential elements of the charges against Appellant proven beyond a reasonable doubt.  As such, Appellant's fourth and final assignment of error has no merit and is hereby overruled.  We affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____
Matthew W. McFarland,
Administrative Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**