[Cite as *State v. Ralston*, 2017-Ohio-7057.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 16CA9 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| JOHN RALSTON, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 07/25/17** |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Patrick T. Clark, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for Appellee.
_____

McFarland, J.

{¶1} John Ralston appeals the judgment entry of conviction entered October 19, 2015 in the Highland County Court of Common Pleas. A Highland County jury returned a guilty verdict on five counts: possession of heroin, possession of methamphetamine, and three counts of receiving stolen property. On appeal, Ralston asserts: (1) the trial court erred in overruling Ralston's motion to suppress the first of four search warrants; (2) he was rendered the ineffective assistance of counsel as to his motion to suppress; and (3) the prosecutor's statements rose to the level of misconduct. Upon

review, we find no merit to Ralston's arguments. Accordingly, we overrule his assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} On July 7, 2015, John Ralston was indicted by the Highland County Grand Jury for: (1) possession of heroin, R.C. 2925.11, a felony of the first degree; (2) aggravated possession of methamphetamine, R.C. 2925.11, a felony of the fifth degree; (3) receiving stolen property, R.C. 2913.51 a felony of the fifth degree; (4) receiving stolen property, R.C. 2913.51, a felony of the fifth degree; and, (5) receiving stolen property, R.C. 2913. 51, a felony of the fourth degree. It was also alleged Appellant's vehicle was property subject to forfeiture specification, R.C. 2941.1417. The indictment arose after officers of the Greenfield Police Department executed warrants on or about April 21, 2015 at Appellant's home and business in Greenfield, Ohio. The officers located property reported stolen from three victims: James Stuckey, Rick Priest, and Weastec, a plant located in Highland County.

{¶3} At arraignment, Appellant entered pleas of not guilty. His counsel subsequently filed a motion to suppress evidence directed to the sufficiency of the first three search warrants. At the suppression hearing, the parties stipulated that if the first warrant was found to be based upon

sufficient probable cause, then the second two warrants would be deemed to also be valid. The trial court ultimately overruled Appellant's motion to suppress.

{¶4} On October 15, 2015, Appellant proceeded to a jury trial. The State of Ohio called three witnesses from the Ohio Bureau of Criminal Identification and Investigation (BCI); James Stuckey and Rick Priest; Doug Ernst on behalf of Weastec; and officers of the Greenfield Police Department and Highland County Sheriff's Department. Appellant called Richard Wright and Ronnie Wright, his associates, Alicia Ralston and Jonathon Ralston, Appellant's two adult children, and one law enforcement officer. At the conclusion of trial, Appellant was found guilty on all counts. Appellant was sentenced to a ten-year prison sentence. He was also ordered to pay a fine, given a license suspension, and forfeited his pickup truck used in the commission of the crimes.

{¶5} On March 9, 2016, Appellant filed a motion for leave to file a delayed appeal, which was subsequently granted by this Court. Where relevant, additional facts will be set forth below.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED WHEN IT OVERRULED
MR. RALSTON'S MOTION TO SUPPRESS AS THE
AFFIDAVIT IN SUPPORT OF THE FIRST SEARCH

WARRANT DID NOT PROVIDE SUFFICIENT PROBABLE CAUSE.

II. MR. RALSTON WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO CHALLENGE THE DEFICIENCIES IN THE SECOND SEARCH WARRANT WHEN IT CONTAINED THE SAME DEFICIENCIES CHALLENGED BY TRIAL COUNSEL IN THE FIRST SEARCH WARRANT.

III. MR. RALSTON'S RIGHT TO A FAIR TRIAL WAS VIOLATED BY REPEATED INSTANCES OF PROSECUTORIAL MISCONDUCT."

ASSIGNMENT OF ERROR ONE

A.  STANDARD OF REVIEW

**{¶6}** "The review of a motion to suppress is a mixed question of law and fact." *State v. Kerns,* 4th Dist. Highland No. 15CA6, 2016-Ohio-63, ¶15, quoting *State v. Castagnola,* 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71.  Because the trial court acts as the trier of fact in suppression hearings and is in the best position to resolve factual issues and evaluate the credibility of witnesses, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside* at ¶ 8.  Accepting these facts as true, we must then "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v.*

*Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 8, citing

*Burnside* at ¶ 8; *State v. Crocker*, 4th Dist. Scioto No. 14CA3640, 2015-

Ohio-2528, ¶ 60.

## B.  LEGAL ANALYSIS

{¶7}  Between April 21 and April 23, 2015, the Greenfield County

Court judge issued four search warrants.  Appellant asserts the facts

contained in the affidavit in support of the first search warrant are

insufficient to support a finding or probable cause necessary to issue the

warrant.  The first, issued on April 21, 2015 at 12:05 p.m. upon application

by Patrolman Jennifer Lowe of the Greenfield Police Department,

authorized the search of Appellant's residence at 760 Jefferson Street in

Greenfield for:

1.  Copper (sic) 1-29 (sic) pipe approximately 20 ft length.
2.  Coated copper auto wire .47 mm diameter
3.  Copper wire .045 mm diameter
4.  Large 3-strand copper 480V cable electric wire.
5.  Tennis shoes.
6.  Any other items previously reported stolen to law enforcement.

{¶8}  Patrolman Lowe executed the first search warrant, seizing:

1.  7 spoils of .47 mm copper wire.
2.  Large 3-strand copper 480V cable electric wire.
3.  ½ inch copper piping.
4.  Miscellaneous rolls of wire.
5.  Bolt cutters, wire strippers, and wire cutters.

{¶9} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Kerns,* 4th Dist. Highland No. 15CA6, 2016-Ohio-63, at ¶ 16, quoting *State v. Emerson,* 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. This constitutional guarantee is protected by the exclusionary rule, which mandates exclusion from trial of the evidence obtained from the unreasonable search and seizure. *Id.*

{¶10} "The Supreme Court of the United States has provided that in determining whether a search warrant was issued upon a proper showing of probable cause, reviewing courts must examine the totality of the circumstances." *State v. Jones,* 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 13, citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, (1983). *Kerns, supra,* at ¶ 17. To determine whether the affidavit submitted in support of a search warrant established probable cause, a magistrate must make a practical, commonsense decision based upon all the circumstances set forth in the affidavit, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Kerns, supra,* at ¶ 18. *See State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Gates* at 238-239.

**{¶11}**  A magistrate must make a practical determination, upon all circumstances set forth in the warrant, whether there is a fair probability that evidence of a crime will be found in a particular place. *State v. Vaughters*, 4th Dist. Scioto No. 2086, 1993 WL 63464, (Mar. 2, 1993), citing *Gates, supra; United States v. Berisford* (C.A.10, 1984), 750 F.2d 57.  To establish probable cause to search a residence, the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued. *United States v. Hendricks* (C.A.9, 1984), 743 F.2d 653; *Travisano, supra*, citing *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075 (1971).  In *United States v. Lucarz* (C.A.9, 1970), 430 F.2d 1051, 1055, the court wrote:

> "To establish the nexus between the place and objects sought, the court may look to the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property." *See also Hendricks, supra; United States v. Freeman* (C.A.5, 1982), 685 F.2d 942.

**{¶12}**  The duty of a reviewing court is more limited–neither the trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination. *Kerns, supra,* at ¶ 19; *George* at paragraph two of the syllabus. The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed, after according great deference to the

magistrate's determination and resolving doubtful or marginal cases in favor of upholding the warrant. *Id.,* following *Gates; see also Jones* at ¶ 13-14.

{¶13} In this case, we must review Patrolman Lowe's affidavit to determine whether the magistrate had "a substantial basis to conclude there was a fair probability the items mentioned in the affidavit would be found at Appellant's residence. The affidavit provides that Patrolman Lowe took a report that on April 21, 2015, Weastec, a business located in Greenfield, had been broken into after the alarm system and electrical supply to the building were disabled.

{¶14} The affidavit also contained information that copper piping, spools of copper "moto wire," and a large spoil of 480V cable electric wire were removed from the business. Shoe prints inside and outside Weastec resembled a tennis shoe type print. After taking the report and attempting to check local scrap yards without success, Lowe checked a residence in town where previous information had been received of Appellant dealing in scrap metal items and stolen goods.[1]

{¶15} In particular, Appellant argues:

1. Patrolman Lowe's affidavit in support of the first search warrant indicated that "previous information had been received" that Appellant dealt in stolen goods. Since the trial

---

[1] In overruling the motion to suppress, the trial court stated: "The Court finds that the information regarding the Defendant dealing in stolen goods was not supported by any evidence and therefore considers it to be irrelevant in the determination of probable cause."

court did not consider this information, the court was left to consider whether the observation of copper pipes and 480V cable electric wire located outside of a scrapping business constituted sufficient probable cause.

2. Patrolman Lowe's affidavit also stated the items in the bed of Appellant's truck appeared "to be in connection with items damaged or missing from Weastec." The affidavit, however, did not identify the items seen in the back of his truck and only stated what items had been stolen from Weastec. Patrolman Lowe did not state that the items matched until the fourth search warrant, issued two days later.

3. Nothing in Patrolman Lowe's affidavit showed the basis of her knowledge that unnamed and unidentified items seen in the bed of Appellant's truck by Lowe, from her vantage point in the alley behind Appellant's residence, "appear to be in connection with" the stolen items from Weastec.

4. Appellant concludes that given the trial court's finding that it would not have issued a warrant without additional information from Patrolman Lowe demonstrates that a substantial basis for probable cause had not been established. Without identifying the items in the bed of Appellant's truck and their connection to Weastec, or information showing that the wire and copper outside Appellant's residence were the wire and copper taken from Weastec or in any way related to criminal activity, sufficient probable cause to grant the first search warrant did not exist.

{¶16} In response, the Appellee argues that Patrolman Lowe observed specific property reported stolen from Weastec on Appellant's property, copper pipes and 480V cable electric wire. Lowe took photos of the items. The basis of knowledge was from an officer who actually

observed suspected stolen property at Appellant's property only hours after the break-in at Weastec.

{¶17} In our own district in *Vaughters, supra,* the appellant was convicted of receiving stolen property. On appeal, he challenged the denial of his motion to suppress, arguing the facts in the affidavit were insufficient to support a finding of probable cause necessary to issue the warrant. Facts revealed that in November 1991, a Scioto County Sheriff's Deputy executed a search warrant authorized by a judge of the Portsmouth Municipal Court at Vaughters' residence, also in the same location as his pest control business. The warrant authorized the search for two specific chemicals used in making pesticides.[2] Upon execution of the warrant, the deputy seized several drums of various chemicals and firearms.

{¶18} Vaughters contended that the affidavit did not include specific information as to the alleged dates of sale. Vaughters argued the absence of the information militated against a finding of probable cause that the stolen chemicals would be on the premises. This court did not agree. We found the information in the affidavit sufficiently recent to allow the magistrate to reasonably believe the chemicals were located on the premises described in the search warrant at the time of the execution of the warrant.

---

[2] It was alleged that Vaughters enlisted another person to steal chemicals from his workplace and then to sell them to Vaughters multiple times and at multiple locations during a six-month period.

{¶19}  Vaughters also contended the affidavit did not include any factual observations that supported the belief that the chemicals could be found at his residence.  Vaughters noted that because the alleged sales of the chemicals occurred in parking lots, neither the informant nor the investigating officers had information regarding the location of the chemicals.  Again, we disagreed.

{¶20}  In *Vaughters,* we found the information listed in the affidavit was sufficient to permit the inference concerning the probable location of the chemicals.  The informant sold large quantities of the hazardous chemicals to Vaughters, apparently for use in Appellant's pest control business.  The issuing magistrate could have reasonably inferred the chemicals were located at Appellant's place of business (which also served as Appellant's residence).  After our review of the affidavit, we concluded, after affording the appropriate deference to the determination of the issuing magistrate and to the court below, there was a "substantial basis" for  the municipal court judge's conclusion that there was a "fair probability" the stolen chemicals might be stored at appellant's business.

{¶21}  Upon review of the foregoing principles, reviewing the totality of the circumstances, and reviewing the affidavit at issue herein, we find the facts submitted in support of the affidavit were sufficient to establish

probable cause necessary to issue the first search warrant. Appellant

challenges the specificity of the description of the items seen in his truck

which "appeared to be in connection with" the items stolen from Weastec,

and the basis of Patrolman Lowe's knowledge. In overruling Appellant's

motion to suppress, the trial court stated in pertinent part:

> "Lowe stated that she and another officer drove down a public alley at the rear of the Defendant's residence at 760 Jefferson St., Greenfield, Ohio and observed copper pipes and 480V cable electric wire lying in a small pile behind the residence. They took photos and observed other items in the back of the Defendant's truck that appeared to be in connection with items damaged or missing from Weastec. There was no further description of these items.

> * * *

> [T]he Court finds that the affidavit, however 'bare bones' in content, did contain the minimum information needed to support the issuance of the search warrant by the county court judge. The precise time of the break-in was not necessary. April 21st was a Tuesday. The search warrant was issued by the county court judge at 12:05 p.m., shortly after noon. It is reasonable to assume that Weastec employees found the break-in when they came to work that morning and contacted police.

> This Court is not concerned with whether officers got out of the car to view the items. The veracity of the affiant's information is not in issue. The affidavit need not set forth that the items viewed were in fact stolen only whether there is a fair probability that they are not the items stolen. That is the purpose of obtaining the warrant, to establish whether they are the same items.

> The fact that the items seen in the truck matched those reported stolen the same day as the report of the break-in was sufficient

given the nature of the items to support a determination of probable cause."

{¶22} Mindful of the instruction to give great deference to the issuing magistrate's determination, we find the items Patrolman Lowe saw in the back of Appellant's truck were identified with sufficient particularity. In its ruling, the trial court noted Patrolman Lowe took photos of the items in the back of Appellant's truck. At trial, Patrolman Lowe testified about her investigation of Appellant's case, as follows:

"Q:     And on [April 21, 2015] did you have occasion to, uh…did you receive a report regarding Weastec?

A:     Yes.

Q:     And what was the basis of that report?

A:     That Weastec had been broken into, uh, and items of copper, copper piping, copper wire, electric wire, had been removed.

Q:     In response to that, what did you do?

A:     Uh, responded there, took photographs of Weastec, photographs of items that had been left behind. Some of the items, when they talked about copper wire I wasn't exactly familiar with, I wasn't exactly for sure what I was looking for. So, some of the wire that had been left behind we took photographs of that so if we came across it I would be able to identify it."

{¶23} While we have the benefit of Appellant's trial testimony after the fact, it supports the conclusion that given the nature of the items, copper

pipe and cable electric wire, and Patrolman Lowe's admitted unfamiliarity with such items, her description of the items did not allow for greater specificity and detail. We have reviewed, in particular, State's exhibits 72, 73, and 76. State's exhibit 72 depicts what appears to be a type of cable intermixed with a type of wiring. It also depicts a spool of what appears to be an orange-colored wire. Items 2, 3, and 4 in the first search warrant are for three types of copper wire.

{¶24} Exhibit 73 is the only photograph of any item in the back of Appellant's white pickup truck. It appears to be a type of wire in good and readily usable condition. Exhibit 76 depicts what appears to be a type of cable and copper pipes, which also appear to be in good and readily usable condition. Item one listed in the first search warrant is copper pipe. Again, given the nature of the items and our cursory review, we find Patrolman Lowe's description of the items was sufficiently reasonable under the circumstances. The trial court remarked upon the close proximity of time between the break-in at Weastec and the matching items in the back of Appellant's truck on the same day. And, the fact that some of the items depicted in the photographs appear to be in good and readily usable condition distinguishes them as possibly stolen goods as opposed to scrap materials.

{¶25}  In *State v. Overholt*, 9th Dist. Medina No. 02CA0108-M, 2003-Ohio-3500, the appellate court reiterated the requirement that items to be located and seized must be identified with sufficient particularity. *Overholt, supra,* at ¶ 13. *See State v. McGettrick*, 40 Ohio App.3d 25, 29, 531 N.E.2d 755 (8th Dist.1988).  The *Overholt* opinion noted that the specificity required varies with the nature of the items to be seized. *See id.* In determining whether a warrant is specific enough, the key inquiry is whether the warrant could reasonably have described the items more precisely. *Id.* at ¶ 14; *State v. Benner,* 40 Ohio St.3d 301, 307, 533 N.E.2d 701 (1988).  It is important to note that the prohibition against general warrants will not prevent the issuance of a broad or generic listing of items to be seized if the circumstances do not allow for greater specificity and detail. *State v. Dalpiaz*, 151 Ohio App.3d 257, 2002-Ohio-7346, 783 N.E.2d 926, (11th Dist.), ¶ 27, citing *United States v. Wicks* (C.A.10, 1993), 995 F.2d 964, 973.

{¶26}  In *Overholt,* which involved the defendant's appeal of a conviction for receiving stolen property, the warrant at issue authorized the seizure of "All-Terrain vehicles, any parts thereof, contraband, any and all all-terrain vehicle parts identified as stolen, [and] any and all vehicle parts identified as stolen."  Thus, the appellate court found: "[T]he warrant limited

the search relative to the particular circumstances of the case and the nature of the alleged stolen items. All the items identified were connected to the investigation of the receipt of the stolen all-terrain vehicle ("ATV") and various parts associated with the vehicle. Therefore, the evidence was sufficiently identified." *Id.* at 15.

{¶27} For the foregoing reasons, while we concur with the trial court's comment that the affidavit supporting the search warrant was "bare bones," we conclude that the issuing magistrate had a substantial basis for concluding that probable cause existed.[3] As such, we find no merit to Appellant's argument that the trial court erred by overruling his motion to suppress.

{¶28} In Appellee's brief, it is argued that even if this court concludes that no substantial basis exists for the issuing magistrate to find that the affidavit established probable cause, the search must be upheld upon the "good faith exception" to the exclusionary rule. In *George, supra,* at paragraph three of the syllabus, the Supreme Court of Ohio stated:

> "The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable

---

[3] In the decision overruling Appellant's motion, the trial court also commented that the affidavit was very brief, could have been drafted in more detail, and that the trial court judge would have required the officer to take more time to add details.

cause. *(United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1983) followed.)"[4]

**{¶29}** In our view, if the first search warrant issued in this case was found deficient, Patrolman Lowe acted in objectively reasonable, good-faith reliance on it so that the exclusionary rule would not apply. *See George,* 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph three of the syllabus. *See Kerns, supra,* at *¶* 26. There is no evidence that the issuing magistrate was misled by information in an affidavit that the affiant knew was false, or would have known was false except for reckless disregard of the truth. Further, there is no evidence the issuing magistrate abandoned his judicial role.

**{¶30}** For the foregoing reasons, we find no merit to Appellant's first assignment of error. As such, it is hereby overruled.

---

[4] In *Leon,* the United States Supreme Court described reasonable reliance as follows:
"Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware,* 438 U.S. 154, (1978). The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' *Brown v. Illinois,* 422 U.S., at 610-611, (POWELL, J., concurring in part); *see Illinois v. Gates, supra*, at 263-264 (WHITE, J., concurring in judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid. Cf. *Massachusetts v. Sheppard,* at 988-991."*Leon,* 468 U.S. at 923, 82 L.Ed.2d at 698-99, 104 S.Ct. at 3421. *See also State v. Wilmoth*, 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986), paragraph one of the syllabus.

## ASSIGNMENT OF ERROR TWO

{¶31} In this case, defense counsel stipulated that if the first search warrant was found to be lawful, that the motion as to the other two search warrants should be overruled as the probable cause in the affidavits in support of those warrants was based upon observations of the officers while on the premises executing the first warrant. Appellant argues there was no strategic reason not to raise the fact that the second search warrant was also not supported by sufficient probable cause and was overbroad. He contends the trial court's ruling and case law point to the deficiencies in the affidavit submitted in support of the second search warrant. In Appellant's view, a successful challenge would have resulted in suppression of evidence from the second search warrant, as well as evidence from the third and fourth search warrants. As such, Appellant concludes that trial counsel was deficient for failing to move to suppress evidence obtained as a result of the second search warrant.

{¶32} Appellee responds that Appellant cannot show that a second motion would have been granted because the initial affidavit was found to have sufficient probable cause. The subsequent affidavits, based upon the first affidavit and with more detail added, would also be upheld by the trial court. Appellee concludes that argument regarding the subsequent search

warrants would have been frivolous, wasteful of the court's time, and Appellant did not suffer ineffective assistance based on counsel's decision not to argue frivolous motions.

## A. STANDARD OF REVIEW

{¶33} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *State v. Bailey,* 4th Dist. Ross No. 2015-Ohio-5483, ¶ 8; *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, (1970), fn.14; *State v. Stout,* 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶ 21; *State v. Barfield*, 4th Dist. Ross No. 13CA3387, 2015-Ohio-891, ¶ 8. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, (1984); *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "[A] defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." *State v. Walters,* 4th Dist. Washington Nos. 13CA33 & 13CA36, 2014-Ohio-4966, ¶ 23, quoting *State*

*v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62 and

*State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

**{¶34}** "In order to show deficient performance, the defendant must

prove that counsel's performance fell below an objective level of reasonable

representation. To show prejudice, the defendant must show a reasonable

probability that, but for counsel's errors, the result of the proceeding would

have been different." *Bailey, supra,* at ¶ 39, quoting *State v. Conway*, 109

Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to

establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto

No. 06CA3116, 2008-Ohio-968, ¶ 14. "Furthermore, courts may not simply

assume the existence of prejudice, but must require that prejudice be

affirmatively demonstrated." *Walters* at ¶ 24. "There are countless ways to

provide effective assistance in any given case; therefore, judicial scrutiny of

counsel's performance must be highly deferential." *Id.* (Citations omitted).

### B. LEGAL ANALYSIS

**{¶35}** The trial court's decision overruling the motion to suppress

observed that the parties stipulated that the ruling as to the second warrant

would depend upon the ruling on the first warrant, as the second warrant was

issued based upon observations of the affiant police officer after entry into

the house pursuant to the first warrant. The trial court further noted that if

the search warrant was found to be lawful, the motion as to the second search warrant would also be overruled as the probable cause in the affidavit in support of the second warrant was based upon the observations of the officers.

{¶36} During execution of the first warrant, Officer Shawn Shanks, who testified at trial, observed a pair of pliers with brown residue on a white household plate in Appellant's basement. Officer Shanks believed the residue could be heroin so he collected the plate and pliers as evidence. Based upon the collection of the suspected heroin residue and observation of other items, Patrolman Lowe applied for a second search warrant.

{¶37} Patrolman Lowe's affidavit, submitted in support of the second search warrant, stated in pertinent part:

> "* * * [O]n April 21, 2015 at 12:25 p.m., I, along with other officers and deputy sheriffs, executed a search warrant at 760 Jefferson Street to search for evidence and property taken from a breaking and entering at Weastec, Industrial Parkway, Greenfield overnight. Upon arriving and while securing everyone in the home, officers observed a substance I believe to be heroin and other drug paraphernalia in the basement. Also inside the home, garage, crawlspace, and inside parked vehicles outside, are piles of tools, equipment, household items, and other items that based on my training and experience and intelligence information are likely stolen from various places and construction sites."

{¶38} "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. Washington

No. 07CA11, 2008-Ohio-482, ¶ 10; citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). As such, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Canterbury, supra,* at 67; *Strickland,* 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

{¶39} Trial counsel's " 'failure to file a suppression motion does not constitute per se ineffective assistance of counsel.' " *State v. Lawson,* 4th Dist. Pickaway No. 14CA20, 2015-Ohio-4394, ¶15, quoting *Madrigal,* 87 Ohio St.3d at 389, quoting *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, (1986); *accord State v. Neyland,* 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 126. "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that

there was a basis to suppress the evidence in question." *State v. Brown,* 115

Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65, citing *State v.*

*Adams,* 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35.

" 'Where the record contains no evidence which would justify the filing of a

motion to suppress, the appellant has not met his burden of proving that his

attorney violated an essential duty by failing to file the motion.' " *State v.*

*Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 208,

quoting *State v. Gibson,* 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th

Dist.1980); *accord Neyland* at ¶ 126.  "We must presume that trial counsel

was effective if counsel 'could have reasonably decided that filing a

suppression motion would be a futile act, even if there is some evidence to

support a motion.' " *State v. Novak,* 4th Dist. Gallia No. 16CA4, 2017-Ohio-

455, ¶ 24, quoting *State v. Siggers,* 4th Dist. Ross No. 13CA3368, 2014-

Ohio-506, ¶ 10, quoting *State v. Walters,* 4th Dist. Scioto No. 12CA949,

2013-Ohio-772, ¶ 20**.**

{¶40}  Having found the affidavit supporting the first application for a

search warrant was supported by probable cause, we further find it was

reasonable trial strategy to make the stipulation regarding the second

warrant.  Appellant's trial counsel could have reasonably determined that

pursuing suppression as to the second search warrant would be a futile act.

However, Appellant contends that: (1) the list of items in the second warrant was overly broad; and, (2) support for issuance of the second warrant was based on an unsupported anonymous tip.

{¶41} The second warrant alleges that the offenses of possession of drugs and receiving stolen property had occurred in Greenfield. Patrolman Lowe's affidavit describes her observation of the substance she suspected to be heroin. The need for the second warrant arose during the initial search at 12:25 p.m. and the second warrant was issued at 2:42 p.m. Given the type of crimes Patrolman Lowe and others were investigating, we find the list of items in the second warrant to be sufficiently specific. And, while Appellant argues support for the second warrant was based on a vague anonymous tip, we note it was also supported by Patrolman Lowe's training and experience. Had defense counsel pursued these arguments, we find it doubtful that he would have prevailed.

{¶42} For the foregoing reasons, we find Appellant cannot show that pursuit of suppression as to the second warrant would have been anything but futile. As such, he is unable to show prejudice for his counsel's strategic choice not to pursue a futile act. We find no merit to Appellant's second assignment of error that he was rendered ineffective assistance. Therefore, we hereby overrule the second assignment of error.

ASSIGNMENT OF ERROR THREE

{¶43} Appellant argues his right to a fair trial was violated by repeated instances of prosecutorial misconduct. Appellant contends the prosecutor expressed an improper personal opinion about his guilt and further, elicited testimony and made closing statements that were improper and should be considered cumulatively. Appellee asserts that the facts and statements, when read in the context of the entire trial, are far from improper. Because Appellant failed to lodge objections to the prosecutor's comments, we review the alleged errors under the plain-error standard.

A.  STANDARD OF REVIEW

{¶44} Failure to object to an alleged error waives all but plain error. *State v. Canterbury,* 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, ¶ 15; *State v. Keeley,* 4th Dist. Washington No. 11CA5, 2012-Ohio-3564, ¶ 28. Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh,* 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 6*; State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. To find plain error, the outcome of trial must clearly have been otherwise. *State v. McCausland,* 124 Ohio St.3d 8,

2009-Ohio-5933, 918 N.E.2d 507, ¶ 15; *State v. Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 50.

{¶45} "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *Canterbury, supra,* at ¶ 16, quoting *State v. Purdin*, 4th Dist. Adams No. 12CA944, 2013-Ohio-22, ¶ 31; quoting *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 36; citing *State v. Smith,* 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45, in turn citing *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.' " *Purdin* at ¶ 31; quoting *State v. Givens,* 4th Dist. Washington No. 07CA19, 2008-Ohio-1202, ¶ 28; quoting *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995). *Accord State v. Apanovitch,* 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). "Prosecutorial misconduct constitutes reversible error only in rare instances." *Purdin, supra,* quoting *State v. Edgington,* 4th Dist. Ross No. 05CA2866, 2006-Ohio-3712, ¶ 18; citing *State v. Keenan,* 66 Ohio St.3d 402, 406, 613 N.E.2d 203 (1993). The "touchstone analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an 'error free, perfect trial.' " *Purdin* at

¶ 31; quoting *Leonard* at ¶ 36; quoting *Gest* at 257.

### B.  LEGAL ANALYSIS

1.  Alleged improper remarks.

{¶46}  At trial, Detective Chris Bowen, on behalf of the State, testified that Appellant told him he had purchased some of the allegedly stolen items at Lucasville Swap Days, described as "a giant flea market." Richard Wright, Appellant's associate, testified on behalf of the defense that Appellant purchased "almost an entire trailer load" of items at Swap Days. Appellant points to the prosecutor's comment to the jury in closing argument that she had been to Lucasville Trade Days.  The prosecutor stated:

> "The Defendant wants you to believe that the tools, the house supplies, and the heater were all purchased at the Lucasville Trade Days.  Now I tell you, I've been there, several times. And certainly these items, probably everything but the heater could be purchased there.  But, let's think about this:  The idea that someone would have purchased all of these stolen items on the same weekend and brought them all back, and the next day served with a search warrant?  That's not reasonable."

{¶47}  Appellant argues the statements made by the State in closing provide a personal opinion about the veracity of both Mr. Ralston's statement and Richard Wright's testimony and indicate that this is based on information personally obtained by the prosecutor but not presented to the jury.

{¶48}  As a general matter, "[i]t is improper for an attorney to express

his or her personal belief or opinion as to the credibility of a witness."
*Canterbury, supra*, at ¶ 25, quoting *State v. Thompson,* 141 Ohio St.3d 254, 292, 2014-Ohio-4751, 23 N.E.3d 1096; quoting *State v. Williams,* 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997).  Further, "the state may not 'unfairly suggest[ ] that the defense's case was untruthful and *not honestly presented.*' " *State v. Thompson* at 291; quoting *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 167.  And, prosecutors " 'may not express their personal beliefs or opinions regarding the guilt of the accused.' " *Canterbury, supra,* at ¶ 18, quoting *State v. Marcum,* 4th Dist. Gallia No. 12CA6, 2013-Ohio-5333, ¶ 63; quoting *State v. Topping*, 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 85; in turn quoting *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990).

**{¶49}** The prosecutor is permitted to fairly comment upon the testimony and evidence. *Canterbury, supra*, at 31. *Topping, supra; State v. Mundt,* 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 119.  Any "'[p]rosecutorial misconduct rises to plain error only if it is clear that a defendant would not have been convicted in the absence of the improper comments.' " *Canterbury, supra,* at ¶ 19, quoting *Marcum, supra,* at ¶ 38; quoting *State v. Purdin, supra*, at ¶ 39; quoting *State v. Keeley, supra,* at ¶ 28; citing *State v. Conley*, 4th Dist. Pike No. 08CA784, 2009-Ohio-1848,

¶ 7*; State v. Olvera–Guillen,* 12th Dist. Butler No. CA2007–05–118, 2008-Ohio-5416, ¶ 36.  Yet, we must be mindful that when reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *State v. Waters*, 4th Dist. Vinton No. 13CA693, 2014-Ohio-3109, ¶ 33; citing *Sunbury v. Sullivan,* 5th Dist. Delaware No. 11CAC030025, 2012-Ohio-3699, ¶ 30; citing *Darden v. Wainright,* 477 U.S. 168, 106 S.Ct. 2464 (1986).

{¶50}  Based upon a review of the record and considering the prosecutor's statement regarding her own familiarity with the "trade days/swap meet," within the context of the entire trial, we cannot conclude that the statements by the prosecution, when reviewed under a plain error standard, rose to the level of prosecutorial misconduct.  In other words, we cannot say Appellant would not have been convicted in the absence of the statements.

{¶51}  Cody Gunning, Appellant's neighbor, testified that on Monday April 20th, approximately 2:30 or 3:00 a.m., he was awakened by the sound of vehicle doors slamming shut.  He got up to get a drink and noticed Appellant in his white Chevy Silverado pickup truck with a spool of wire and other miscellaneous items in the bed of the truck.  Gunning went back to bed.  When he left around 5:00 or 5:30 a.m. for a work-related interview, he

noticed everything in the back of Appellant's white truck was gone. Gunning identified the white pickup truck in the State's exhibits, and he identified Appellant in the courtroom.

{¶52} Doug Ernst, senior manager over operations at Weastec, testified the Greenfield facility was not staffed on Monday, April 20th. However, when Ernst went to the Weastec Greenfield facility on Tuesday, April 21st, he found that somebody had cut security wires, broken strike plates, and gained access to the building. Weastec items were in disarray, out of place. He found various items, unique to Weastec, had been stolen, such as spools of copper wire. He immediately reported the break-in to the Greenfield Police Department.

{¶53} Patrolman Lowe testified, as related above, that she responded to the Weastec facility, took a report, and began looking at various local scrap yards. When she saw items in the back of Appellant's truck that she thought could possibly be the stolen items, she applied for a search warrant, and subsequently found various items of Weastec property.

{¶54} James Stuckey, who was building a new home in Leesburg, Ohio, testified that he was a victim of theft on November 26, 2014. Upon learning of the Weastec incident, on April 22, 2015, Stuckey contacted the Greenfield Police Department and Highland County Sheriff's Office

regarding his stolen property. At both places he found items belonging to him. He also accompanied officers to Appellant's residence and found more items belonging to him, including a rare heater, a spool of Romex wire, a decorative outdoor light, and windows. Stuckey identified the stolen property at trial.

{¶55} Rick Priest, a building contractor, testified he was working at the Stuckey job site. He had an enclosed tool trailer to store his construction-related equipment. When he reported to the job site on October 2014, he found his trailer locks had been cut and his tools removed. He reported the theft to the Sheriff's Department. Another theft at the same job site occurred on November 28, 2014. Priest again reported the theft to law enforcement. On April 23, 2015, he received a call from the Greenfield Police Department to report and identify his property at the police department at Appellant's home. Priest identified for the jury various photographs of hand tools and power tools that he recovered.

{¶56} Richard Wright testified on behalf of Appellant. He testified he was self-employed and did odd jobs. Because he lives near Appellant's recycling center, he would sometimes open the business or close it for Appellant. He had worked for Appellant intermittently for 20 years. He testified Appellant took in all types of scrap metal, and sold it to larger

recycling centers. He testified Appellant hoarded miscellaneous scrap items in his building.

{¶57} Wright testified he went to a flea market in Lucasville with Appellant who bought windows and lights. Wright identified light fixtures and windows in the State's exhibits and testified Appellant bought those at Lucasville. He also testified Appellant bought "almost an entire trailer load" of various items at the flea market.

{¶58} On cross-examination, Wright testified Appellant paid him approximately $40.00 a day. He did not report that to the IRS. Wright testified his brother drove the white truck to Lucasville, and Wright unloaded the items purchased at Lucasville late at night.

{¶59} Appellant was unable to elicit many pertinent facts from his final witnesses. Richard Wright's brother, Ronnie Wright, testified he had known Appellant for 5-6 years. He repaired items for Appellant's business. Appellant also called his son and daughter, both whom appeared in jail – issued clothing before the jury. Due to their own legal difficulties, they exercised their Fifth Amendment right not to incriminate themselves in response to many questions.

{¶60} Based on the testimony presented at trial, we cannot say Appellant would not have been convicted in the absence of the prosecutor's

statement regarding her familiarity with the Lucasville flea market. While much of the evidence of Appellant's guilt is circumstantial, "[D]irect evidence of a fact is not required. Circumstantial evidence * * * may also be more certain, satisfying, and persuasive than direct evidence." *State v. Dunn,* 4th Dist. Jackson No. 15CA1,2017-Ohio-518,¶ 25, quoting *State v. Grube,* 2013-Ohio-692, 987 N.E.2d 287 (4th Dist.), ¶ 30, quoting *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), citing *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 81 S.Ct. 6, 10, (1960), citing *Rogers v. Missouri Pacific RR Co,* 352 U.S. 500-508, fn.17, 77 S.Ct. 443, 449, fn.17, (1957).

{¶61} While Appellant did present his defense that the allegedly stolen items were purchased at the flea market he visited, determination of the credibility of all the witnesses was well within the province of the jury. *State v. Shifflet,* 2015-Ohio-4250, 44 N.E.3d 966, at ¶ 99. A jury sitting as the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. *State v. Grube,* 2013-Ohio-692, 987 N.E.2d 287, ¶ 31 (4th Dist.).

{¶62} A jury is in the best position to view the witnesses and to observe witness demeanor, gestures and voice inflections, and to use those observations to weigh credibility. *Grube, supra,* citing *Myers v. Garson,* 66

Ohio St.3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Appellate courts should not generally second guess juries on matters of weight and credibility. *Grube, supra. See State v. Vance,* 4th Dist. Ross No. 03CA27, 2004-Ohio-5370, at ¶ 10.

{¶63} We are also mindful prosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." *State v. Hall,* 4th Dist. Ross No. 14CA3391, 2014-Ohio-2959, ¶ 47. Furthermore, the trial court instructed the jury that the closing arguments of counsel are not evidence, and we presume that jurors follow the court's instructions. *State v. Noling,* 98 Ohio St. 3d 44, 2002-Ohio-7044, 781 N.E. 2d 88, *See, e.g., State v. Williams,* 73 Ohio St.3d 153, 159, 652 N.E.2d 721 (1995).

{¶64} For the foregoing reasons, we find the prosecutor's comment that she had been to the Lucasville Flea Market and that Appellant's explanation of how he came to possess the stolen items was not reasonable, even if in error, cannot be said to have risen to the level of plain error.

2. Alleged misrepresentation of evidence.

{¶65} Appellant was not charged with breaking and entering

Weastec. He argues that at trial, the State elicited testimony from Patrolman Lowe which incorrectly implied Appellant was involved in the break-in at Weastec.

> Q:     During the search, uh, what about the truck caught your attention?
>
> A:     The initial thing that caught my attention is there had been mud sprayed up the side. Uh, subjects out at Weastec, uh, whatever vehicle that was used had gotten stuck in the mud behind the back of the building because of rain the previous night. And the other thing that caught my eye about his truck was some items in the back that appeared to have possibly to have come from Weastec.

While not objecting to the testimony, defense counsel later tried to elicit testimony from Lowe that Appellant had been ruled out as involved in the break-in at Weastec. He was permitted to elicit testimony that the tire tracks at Weastec did not match Appellant's truck. However, he was not allowed to question about Appellant's exclusion from the DNA evidence from Weastec and the recovery of fingerprints at Weastec that were not compared to Appellant's.[5]

{¶66} Appellant argues Lowe's testimony misrepresented the evidence and when the State's closing statement and elicited testimony are considered cumulatively, Appellant's right to a fair trial was prejudiced.

---

[5] At a bench conference on the State's objections to defense counsel's questions on the fingerprinting and DNA testing, the State offered that it had elicited the testimony about the truck from Patrolman Lowe in order to prove the truck was holding wire belonging to Weastec and therefore subject to forfeiture.

However, Appellee takes the position that it was Appellant who was trying to misrepresent the evidence since the fingerprints and DNA were not even sent for testing. Defense counsel's questions on these topics, if not overruled by the trial court, could have mislead the jury into thinking scientific testing had in fact been done and Appellant's fingerprints and DNA had been excluded by the testing.

{¶67} While Patrolman Lowe's testimony may have had the effect of suggesting Appellant was involved in the break-in, it does appear relevant to explaining the steps of her investigation. Defense counsel, by strategically not posing an objection, was able to utilize the testimony to emphasize that the truck tracks at Weastec did not match Appellant's truck. We do not find the prosecutor's action in eliciting the testimony to be misconduct.

{¶68} Further, if the prosecutor's action could be construed as misconduct, we do not find it rose to the level of plain error. Similarly, we do not find Appellant's right to a fair trial was prejudiced by the elicited testimony in and of itself, or cumulatively. As set forth above, we find there was other circumstantial evidence of Appellant's guilt which the jury found credible. For the foregoing reasons, we find no merit to Appellant's third assignment of error and it is hereby overruled. Accordingly, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.:   Concurs in Judgment and Opinion as to Assignment of Error II;
              Concurs in Judgment Only as to Assignments of Error I & III.
Abele, J.:    Concurs in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL:     Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**